UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GROUND GAME TEXAS, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> §     Civil Action No. _____ <br> § <br> CLARICE Y. BALDERAS, in her § <br> official capacity as City Secretary § <br> of the City of Edinburg; and CITY § <br> OF EDINBURG, TEXAS; § <br> § <br> Defendants. § <br> § | |

**VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Ground Game Texas ("Ground Game") files this verified complaint seeking declaratory and injunctive relief pursuant to the First Amendment of the United States Constitution.

**I.     INTRODUCTION**

1. The right to petition is one of the fundamental guarantees of the Bill of Rights, but it is under attack in the City of Edinburg. The Edinburg City Charter guarantees voters the right to initiate new ordinances via an initiative process, but City staff have decided that only a select few may participate in petition campaigns.

2. The core of this controversy is whether the City of Edinburg may limit petition gathering to a five-person "committee of the petition" who publicly take responsibility for a local initiative campaign. In April 2022, after successfully gathering signatures on a petition for a "Living Wage" for Edinburg employees and contractors, Ground Game submitted 880 signatures of verified city voters to the Edinburg City Secretary, well in excess of minimum signature requirements. In

1

response, the Secretary ruled that the petition failed to comply with City law in three respects: (1) it did not list the dates of birth of the members of the five-person committee; (2) it did not utilize the correct language for affidavits for petition circulators; and (3) the signatures were gathered by people other than the five-person committee of the petition. In response, as permitted by the City Charter, Ground Game amended its petition by providing the dates of birth and new circulator affidavits that used the precise language required by the City Charter. Ground Game also provided a memorandum explaining to the City of Edinburg and the City Secretary that limiting the pool of petition circulators to a five-person committee was unconstitutional. Nevertheless, on May 20, 2022, the City Secretary rejected the amended petition.  She listed three reasons: (1) that the names and addresses of the five-person committee did not appear on the face of the petition; (2) the original affidavits were signed by people other than the five-person committee; and (3) that the amended affidavits were signed by people other than the five-person committee.

3. The City Secretary's decision to reject Ground Game's amended petition violates established First Amendment law. Ground Game's amended petition complied with local and state requirements in every respect. Regarding the Secretary's first objection, Ground Game complied with local rules concerned the placement of the names of the five-person committee on the petition form by adding the names to the second page of each petition, and no rule prohibits having a two-page petition form. As to the second and third objections, both can be distilled to the City Secretary's unlawful determination that only members of the five-person committee may collect petition signatures  The City Secretary's decision is unconstitutional because it not only requires circulators to be registered Edinburg voters, but it also mandates that only five people in total may gather signatures for an initiative.

4. To vindicate the First Amendment rights prejudiced by the City Secretary's decision, Ground Game requests emergency declaratory and injunctive relief, to ensure that the right to petition may be fully exercised in the Edinburg community.

## II.     JURISDICTION AND VENUE

5. Ground Game brings this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States.

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a)(3). The Court may grant the requested temporary restraining order and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as the Court's general legal and equitable powers.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Ground Game's claims occurred in this district. Venue is also appropriate under 28 U.S.C. § 1391(b)(1) because at least one defendant resides in this judicial district.

## III.     PARTIES

8. Plaintiff GROUND GAME TEXAS is a nonprofit advocacy organization dedicated to engaging, activating, and mobilizing Texas voters through progressive issue campaigns. It brings this action on its own behalf as well as on behalf of the 880 voters of the City of Edinburg who signed the initiative petition at issue here. As of June 2022, Ground Game is working in ten Texas cities, collaborating with local organizations to develop and implement city-level ballot measure campaigns on issues including marijuana decriminalization, a $15 minimum wage, and local action on climate change. Ground Game calls these campaign issues "workers, wages, and weed."[1] In

---

[1] Ground Game's co-founders described their vision for the organization in a summer 2021 op-ed published in the Washington Post, "Democrats need a winning message. We propose: 'Workers, wages

collaboration with local community organization LUPE Votes, Ground Game drafted a "Living Wage" petition that would require the City of Edinburg to pay employees and contractors at least $15 per hour. Ground Game staff led the petition campaign with the goal of qualifying the Living Wage measure for the November 8, 2022, general election ballot.

9. Defendant CLARICE Y. BALDERAS is the City Secretary of the City of Edinburg. In her official capacity, Secretary Balderas must certify whether a voter-initiated petition qualifies for the ballot.

10. Defendant CITY OF EDINBURG, TEXAS adopted a "home rule" city charter as permitted by the Texas Constitution. Through its Charter, the City authorizes voters to initiate local ordinances through a petition campaign.

### IV. STATEMENT OF FACTS

**A.     The Initiative Process in Edinburg**

11. The City Charter of Edinburg grants its residents the power to initiate local ordinances. CHARTER, Art. XIV, § 1 ("The voters shall have the power to propose any ordinance, except an appropriation ordinance or an ordinance making a tax levy, and to adopt or reject the same at the polls, such power being known as the initiative.").

12. The Charter provides a multi-step process to qualify a voter initiative for the ballot. First, voters must submit to the City Secretary signatures of city voters equal to at least 10% of the electorate in the most recent municipal general election. CHARTER, Art. XIV, § 1. If the Secretary certifies the signatures submitted, the City Council may adopt the ordinance directly by a majority vote. *Id.*, § 2. If the City Council does not adopt the ordinance, voters may submit a second quantity of signatures, equal to at least 5% of the electorate in the most recent municipal general election. *Id.*,

---

and weed.'" (available at https://www.washingtonpost.com/opinions/2021/07/13/democrats-midterm-election-message-workers-wages-weed/).

§ 3. If the Secretary certifies the second signature submission, the measure must be placed on the ballot for the next uniform election. *Id.*, § 4; TEX. ELEC. CODE § 41.001.

13. The Charter contains several requirements concerning the form of the petition. Petition papers circulated for signature must be "uniform in character" and must "contain the proposed resolution or ordinance in full." CHARTER, Art. XIV, § 1. The circulators of the petition must attach an affidavit to each separate petition paper. *Id.*, Art. XVI, § 1. The Charter requires specific language for the affidavit, in which petition circulators attest that they personally witnessed the signatures collected. *Id.* Each petition paper must also identify a committee of five Edinburg voters by name and address. *Id.* The committee "shall be regarded as responsible for the circulation and filing of the petition." *Id.*

14. After petition papers are submitted to the City Secretary, the Secretary has ten days to determine "whether each paper of the petition is properly attested and whether the petition is signed by a sufficient number of voters." CHARTER, Art. XVI, § 2. The City Secretary must certify the result of their examination to the City Council. *Id.* If the Secretary certifies that the petition is insufficient, they must set forth "the particulars in which it is defective." *Id.*

15. If the City Secretary does not certify a petition, petitioners have ten days to amend the petition submission. *Id.*, § 3. Upon receipt of an amended petition, the City Secretary has five more days to issue a final decision on certification. *Id.*

**B.     Ground Game's Petition Campaign**

16. Ground Game worked with LUPE Votes, a Rio Grande Valley-based advocacy organization, to develop the "Living Wage" petition. The proposed ordinance would require the City of Edinburg to establish a minimum wage of $15 per hour for all City employees. In addition, any vendor wishing to contract with the City would be required to certify that its workers under the city contract are paid at least $15 per hour.

17. Together, Ground Game and LUPE Votes developed a budget for the Living Wage petition campaign to cover costs including campaign management, field personnel, campaign materials and supplies, data entry, and signature verification. LUPE Votes agreed to provide Ground Game with a grant of funds to defray campaign costs.

18. Next, LUPE Votes identified five City of Edinburg voters who agreed to serve as "a committee of the petitioner," as required by the City Charter. CHARTER, Art. XVI, § 1. Ground Game then created a two-sided petition form that included room for signatures on the front side; on the back side, Ground Game printed the names and addresses of the committee members, along with the proposed ordinance language. ("Petition Form," Ex. A.)

19. In January 2022, Ground Game hired Lorena Ramirez and Karen Salazar as field organizers for the Edinburg Living Wage campaign. Ramirez and Salazar are both skilled political organizers who live in Hidalgo County. Neither is a registered City of Edinburg voter.

20. Ground Game set up a campaign structure to support Ramirez and Salazar as field organizers. Ben Deatrick supervised the Edinburg team. Deatrick is a veteran of multiple political campaigns and serves as the Organizing Manager for Ground Game. Together, Ramirez, Salazar and Deatrick developed a campaign strategy. They used Ground Game's paid subscriptions to campaign and database tools, including the Texas voter file, to develop specific outreach plans in voter-rich areas. The team met weekly as a group; Ramirez and Salazar reported on progress, discussed challenges, and made plans for the days ahead, while Deatrick offered coaching and support.

21. Between approximately January 21 and April 2, 2022, Ramirez and Salazar gathered thousands of signatures for the Living Wage petition. Along the way, they developed a variety of tactics to find registered Edinburg voters. They went to public places and shopping centers, fitness gyms and municipal parks; they visited the University of Texas, Rio Grande Valley campus, early

voting sites, and community events. They also canvassed voters door-to-door in multiple city precincts, and they recruited volunteers to assist in gathering signatures.

22. To develop a communications strategy that was appropriate for the Edinburg community, Ramirez and Salazar conducted considerable experimentation. They began with talking points developed by Ground Game staff and adapted them for different contexts. Ramirez and Salazar are both bilingual and developed ways to effectively translate the Living Wage policy into Spanish and casual speech. They developed a persuasive bilingual explanation for why the Living Wage policy was right for the Edinburg community.

23. As Ramirez and Salazar collected signatures, Deatrick supervised a data team composed of paid staff who work virtually from Austin and across the country. The data team entered each petition signature into a spreadsheet and cross-referenced the voter file to determine which signatures were likely valid. Over the course of the campaign, the data team was able to verify approximately 64% of its gathered signatures, allowing the organization to have confidence in its submission to the City.

24. Under the City Charter, Ground Game was required to submit signatures equal to ten percent of the turnout of the most recent general municipal election to obtain City Secretary verification. At the November 2, 2021, election in Edinburg, 8,042 people voted in the citywide mayor election.[2] Thus, Ground Game was required to submit at least 804 valid signatures to obtain certification.

---

[2] Hidalgo County publishes results of the November 2, 2021, City of Edinburg election on its website: https://results.enr.clarityelections.com/TX/Hidalgo/111122/web.278093/#/summary (last accessed May 31, 2022).

25. On April 14, 2022, Ground Game submitted 214 pages of signed petitions to the City Secretary. The organization provided a cover memorandum that described how the organization had pre-verified the signatures of at least 880 registered Edinburg voters.

**C.  City Secretary Denial of Certification**

26. On May 6, 2022, the Edinburg Interim City Secretary Elizabeth Rodriguez notified Ground Game that she would not certify the Living Wage petition. ("Secretary's First Letter, Ex. B.")

27. The Secretary's letter to Ground Game listed three reasons for her decision. The Secretary's first reason was that Ground Game's petition was circulated by people who were not among the five members of the petitioner's committee. The Secretary's second reason was that Ground Game did not provide the dates of birth of the five members of the petitioner's committee. The Secretary's third reason was that the affidavit on the Living Wage petition did not match the affidavit form provided in the City Charter.

28. The City Secretary did not raise any objection concerning the validity of the petition signatures themselves or the number of signatures submitted.

**D.  Ground Game's Amended Petition**

29. On May 13, 2022, Ground Game submitted an amendment to its Living Wage petition. In its amendment, Ground Game provided the City Secretary with the dates of birth for each of the five members of the petitioner's committee.[3] Ground Game also provided new notarizations for each of the 214 pages of signatures submitted to the City Secretary to match the affidavit form provided in the City Charter.

---

[3] The Edinburg City Charter does not require a petition form to include the dates of birth of the five-person committee of the petitioner. Ground Game provided this information as a courtesy to the City Secretary to assist in the verification of the voter registration status of the five members of the petitioner's committee.

8

30. In response to the City Secretary's objection regarding the people who circulated the petition, Ground Game provided a legal memorandum, explaining how binding federal precedent prohibits any local policy that would require petition circulators to be registered voters of the City.

31. Thus, as of May 13, 2022, Ground Game had complied with all petition requirements. The organization had submitted sufficient signatures to qualify for the ballot. The organization amended its submission to provide notarized affidavits, with the proper affidavit language, for every signature page submitted. The form of the petition complied with all other requirements under city and state law.

E.   **City Secretary's Final Denial of Certification**

32. On May 20, 2022, new City Secretary Clarice Y. Balderas notified Ground Game that she had reviewed the original and amended petitions and that she would not certify the Living Wage petition. (Ex. C, "Secretary's Second Letter.") The Secretary listed three objections to the Ground Game petition.

33. The Secretary's first objection was that, "The names and addresses, with or without the signatures or dates of births of the five voters of the City, did not appear in the petition."

34. The Secretary's first objection apparently overlooked that the second page of each petition form contained the names and addresses of the five members of the petitioners' committee.

35. The Secretary's second objection was that, "The five names of the five voters of the City listed on the 214 pages of the petition did not match the names on the affidavits."

36   The Secretary's third objection was that, "Although an amendment was received correcting the wording on the affidavits, the names of the people signing the affidavits did not match any of the names of the five voters of the City listed on the 214 pages of the petition."

37. In her second and third objections, the Secretary restates the City's policy that only the five members of the petitioner's committee were eligible to circulate the Living Wage petition.

9

## V.     CAUSE OF ACTION

### FIRST AMENDMENT: RIGHT TO PETITION
### (42 U.S.C. § 1983)

38.     Ground Game incorporates the previous paragraphs as if alleged herein.

39.     The First Amendment to the United States Constitution, enforceable to the City of Edinburg through the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983, provides that no law shall abridge the right to petition the government for redress of grievances.

40.     As described above, through its original and amended petitions, Ground Game complied with all city and state requirements to qualify an initiated ordinance to be considered by the City Council of the City of Edinburg.

41.     The City Secretary's decision to refuse certification of Ground Game's petition, on the grounds that petition circulators were not among the five registered City voters who formed the petitioner's committee, violates the rights of Ground Game and the 880 Edinburg voters who signed the petition under the First Amendment's right to petition. The City Secretary also erred, and impermissibly burdened the fundamental First Amendment rights of Ground Game and the 880 Edinburg petition signers, by refusing to certify the petition on the grounds that the names of the five-person committee of the petition appeared on the second page of the petition and not the first.

### INJUNCTIVE AND DECLARATORY RELIEF

42.     Ground Game seeks injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 to require the City Secretary and the City of Edinburg to verify Ground Game's petition, expedite City Charter timelines for initiative petition review, and undertake all necessary actions to ensure that the Edinburg City Council has the opportunity to adopt the Living Wage petition or order a local election

on the initiative no later than August 16, 2022, the deadline established by the Texas Secretary of State for placing an item on the November 8, 2022 general election ballot.

43.     Without injunctive relief, the City Secretary and the City of Edinburg will continue their same practices and conduct, disregarding federal legal mandates, and burdening the fundamental right to petition as guaranteed by the First Amendment.

44.     Ground Game has no plain, adequate, or complete remedy at law to address the wrongs described herein.

## ATTORNEYS' FEES

45.     Pursuant to 42 U.S.C. § 1988, Ground Game is entitled to recover attorneys' fees, litigation expenses, and court costs.

## PRAYER FOR RELIEF

WHEREFORE, Ground Game respectfully requests that the Court award the following relief:

A.      Issue a temporary restraining order requiring the City Secretary and the City of Edinburg to verify Ground Game's petition, expedite City Charter timelines for initiative petition review, and undertake all necessary actions to ensure that the Edinburg City Council has the opportunity to adopt the Living Wage petition or order a local election on the initiated ordinance no later than August 16, 2022;

B.      Remedy ongoing violations of law and the Constitution by granting declaratory and injunctive relief, as set out in this complaint;

C.      Permanently enjoin the City Secretary and the City of Edinburg to prevent violations of the fundamental right of petition as described above, and prevent the City enforcing any requirement that petition circulators be registered voters of the City of Edinburg or that petition circulators must be limited to the five individuals who identify themselves as part of the committee of the petition;

D. Find that Ground Game is the prevailing party in this case and award them attorneys' fees, court costs, and litigation expenses; and

E. Grant such other and further relief as appears reasonable and just, to which Ground Game may be entitled.

Respectfully submitted,

By: */s/ Michael Siegel*
Michael Siegel, Esq.
mike@register2vote.org
State Bar No. 24093148
4107 Medical Parkway, #212
Austin, TX 78756
Tel: (737) 615-9044
*Lead Counsel for Plaintiff*
GROUND GAME TEXAS

SIEGEL, YEE, BRUNNER & MEHTA

By: */s/ Dan Siegel*
Dan Siegel
DanSiegel@siegelyee.com
CA State Bar No. 56400
475 14th Street, Suite 500
Oakland, CA 94612
Tel: (510) 839-1200
*Attorneys for Plaintiff*
GROUND GAME TEXAS
**Application for Pro Hac Vice pending*

## VERIFICATION

1. My name is Julie Oliver. My date of birth is July 25, 1972, and my address is 3500 Werner Ave, Austin, Texas, 78722.

2. I am the Executive Director of Ground Game Texas.

3. I have personal knowledge of Ground Game Texas and its activities, including those set out in the foregoing *Verified Application for Temporary Restraining Order and Complaint for Injunctive and Declaratory Relief*.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Travis County, State of Texas, on the 3rd day of June, 2022.

_____
Julie Oliver, Declarant