UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GROUND GAME TEXAS, § § Plaintiff, § § v. § § CLARICE Y. BALDERAS, in her § official capacity as City Secretary § of the City of Edinburg; and CITY § OF EDINBURG, TEXAS; § § Defendants. § § | No. 4:22-cv-01832 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Ground Game Texas ("Ground Game") files this Memorandum of Points and Authorities in support of its *Verified Application for Temporary Restraining Order and Complaint for Injunctive and Declaratory Relief*. (Dkt. 1.)

**I.   SUMMARY**

Edinburg City Secretary Balderas unconstitutionally rejected Ground Game's petition for an initiative election on the grounds that the people who gathered the signatures were not registered Edinburg city voters. The Secretary also objected, without basis, to the form of the petitions submitted. The Secretary's action was an unconstitutional violation of Ground Game's First Amendment rights. *See Buckley v. American Const. Law Fdn.*, 525 U.S. 182 (1999); *Pool v. City of Houston*, ___ F.Supp.3d ___, 2022 WL 523772 (S.D. Tex. Feb. 22, 2022). Ground Game will be irreparably harmed in the absence of injunctive relief, as it will be denied a chance to place its proposed ordinance for an Edinburg "Living Wage" policy on the November 8, 2022, general

1

election ballot. To protect established First Amendment rights and to ensure that defendants' unconstitutional action does not succeed in blocking an important policy proposal from public consideration, Ground Game requests that this Court issue a temporary restraining order.

## II. STATEMENT OF FACTS

### A. The Edinburg City Charter Allows Local Voters to Legislate via Ballot Initiative

The Edinburg City Charter grants its residents the power to initiate local ordinances. Dkt. 1, ¶ 11. To start an initiative, five Edinburg voters must agree to be a "committee of the petitioner" that is "responsible for the circulation and filing of the petition." *Id.*, ¶ 13; CITY CHARTER OF EDINBURG, TEXAS, Art. XVI, § 1.

Under Edinburg's rules, the "petition papers" that are circulated for signature must be "uniform in character" and must "contain the proposed resolution or ordinance in full." *Id.* Each petition must identify the five voters who serve on the committee of the petitioner. *Id.* Each petition signature must be personally witnessed by the petition circulator. For signatures to be valid, petition circulators must include an affidavit for each page of signatures witnessed. *Id.* The Charter prescribes the language to be used in the affidavit. *Id.*

To qualify a voter initiative for the ballot, voters must first submit to the City Secretary signatures of city voters equal to at least 10% of the electorate in the most recent municipal general election. Dkt. 1, ¶ 12; CHARTER, Art. XIV, § 1. If the Secretary certifies the signatures submitted, the City Council may adopt the ordinance directly by a majority vote. Dkt. 1, ¶ 12; CHARTER, Art. XIV, § 2. If the City Council does not adopt the ordinance, voters may submit a second quantity of signatures, equal to at least 5% of the electorate in the most recent municipal general election. Dkt. 1, ¶ 12; CHARTER, Art. XIV, § 3. If the Secretary certifies the second signature submission, the measure must be placed on the ballot for the next uniform election. Dkt. 1, ¶ 12; CHARTER, Art. XIV, § 4; TEX. ELEC. CODE § 41.001.

The City Secretary has specific duties to administer the initiative process. After the first set of petition papers is submitted, the Secretary has ten days to determine "whether each paper of the petition is properly attested and whether the petition is signed by a sufficient number of voters." Dkt. 1, ¶ 14; CHARTER, Art. XVI, § 2. The Secretary must certify the result of their examination to the City Council. *Id.* If the Secretary certifies that the petition is insufficient, they must set forth "the particulars in which it is defective." *Id.*

If the Secretary does not certify a petition, petitioners have ten days to amend the petition submission. Dkt. 1, ¶ 15; CHARTER, Art. XVI, § 3. Upon receipt of an amended petition, the Secretary has five more days to issue a final decision on certification. *Id.*

**B. Ground Game Submitted a Complete Petition for a "Living Wage" Initiated Ordinance**

Ground Game Texas is an advocacy organization working with community leaders in Hidalgo County to manage a petition campaign for a "Living Wage" in the City of Edinburg. Dkt. 1, ¶¶ 8, 16. The proposed ordinance would require the City and its contractors to comply with a $15 per hour minimum wage. *Id.*, ¶ 16.

To prepare for the initiative campaign, Ground Game and its allies identified five City of Edinburg voters who agreed to serve as a "committee of the petitioner" as required by the City Charter. *Id.*, ¶ 18. Ground Game then hired staff and conducted a three-month campaign that culminated on April 14, 2022, when Ground Game submitted 214 pages of signatures to the City Secretary. *Id.*, ¶¶ 19-23, 25. Before submitting the signatures, Ground Game cross-checked each name in the Hidalgo County voter file and thus "pre-verified" the signatures of at least 880 registered Edinburg voters. *Id.*, ¶ 25. Under local rules, Ground Game was required to submit at least 804 valid signatures to qualify for the ballot. *Id.*, ¶ 24.

Ground Game's signatures were collected on a two-page form. Dkt. 1, ¶ 18; Dkt. 1-1. The first page of the form contained a summary of the proposed ordinance and petition blanks. *Id.* The

second page contained the full text of the proposed ordinance and the names of the five members of the "committee of the petitioner." *Id.*

In response to the submission of petition signatures, the City Secretary issued a letter of rejection, citing three specific reasons. Dkt. 1, ¶ 26; Dkt. 1-2. First, the Secretary objected that the petition was circulated by people who were not among the five-member committee of the petitioner. *Id.* Second, the Secretary objected that Ground Game did not provide the dates of birth for the five committee members. *Id.* Third, the Secretary objected to the form of the affidavits attached to each petition page. *Id.*

Ground Game timely amended its petition submission. Dkt. 1, ¶ 29. Ground Game provided the dates of birth of the committee members. *Id.* Ground Game also provided updated affidavits for each of the 214 petition forms, to match the exact affidavit language provided by the City Charter. *Id.* In response to the Secretary's objection concerning who circulated the petition, Ground Game provided a legal memorandum to explain why Edinburg's voter registration requirement for petition circulators was unconstitutional. *Id.*, ¶30.

### B. The City Secretary's Final Determination Emphasized the City Policy that Only Five Registered Edinburg Voters May Circulate an Initiative Petition

Edinburg City Secretary Clarice Balderas issued a final determination on May 20, 2022, rejecting the amended Ground Game petition. Dkt. 1, ¶ 32; Dkt. 1-3. The Secretary listed three objections. First, the Secretary objected that the names of addresses of the five committee members did not appear on the petition. Dkt. 1, ¶ 33; Dkt. 1-3. Second, the Secretary objected that "[t]he five names of the five voters of the City listed on the 214 pages of the petition did not match the names on the affidavits." Dkt. 1, ¶ 35; Dkt. 1-3. Third, the Secretary objected that "the names of the people signing the [amended] affidavits did not match the names of the five voters of the City listed on the 214 pages of the petition." Dkt. 1, ¶ 36; Dkt. 1-3.

The Secretary's final determination did not object to form of the amended affidavits submitted, nor did the Secretary object to the number of signatures submitted. Dkt. 1-3.

### III. STANDARD OF REVIEW

To prevail on an application for a temporary restraining order, Ground Game must meet a four-part test, showing: (1) a substantial likelihood of success on the merits; (2) that irreparable harm will ensue if the request for injunctive relief is denied; (3) that the threatened injury outweighs the harm that injunctive relief may cause defendants; and (4) that injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (providing standard for the issuance of a preliminary injunction); *Texas v. United States*, 524 F.Supp.3d 598, 651 (S.D.Tex. 2021) ("The standard for deciding whether to issue a preliminary injunction is the same standard used to issue a temporary restraining order").

The party seeking relief must prove each of the four elements enumerated above, but "none of the four prerequisites has a fixed quantitative value." *State of Tex. v. Seatrain Int'l, S.A.,* 518 F.2d 175, 180 (5th Cir. 1975); *Texas*, 524 F.Supp.3d at 651. "Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Seatrain*, 518 F.2d at 180.

### IV. ARGUMENT

**A. Ground Game is Likely to Prevail on its First Amendment Claim**

**1. The City's policy limiting petition circulators to registered city voters is plainly unconstitutional.**

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances," U.S. CONST., amend. I, and is applicable to the states and its political subdivisions through the Fourteenth Amendment. *Westberry v. Gilman Paper Co.*, 507 F.2d 206, 211 (5th Cir. 1975).

The First Amendment specifically protects the right of individuals to circulate petitions at the local and state levels. *See Buckley v. American Const. Law Fdn.*, 525 U.S. 182 (1999) (striking down voter registration requirements for individuals who circulate petitions in the State of Colorado); *Pool v. City of Houston*, ___ F.Supp.3d ___, 2022 WL 523772 (S.D. Tex. Feb. 22, 2022) (invalidating City of Houston charter requirement that required circulators to be registered Houston voters). As *Buckley* announced, "Petition circulation . . . is core political speech, because it involves interactive communication concerning political change." *Buckley*, 525 U.S. at 186 (citing *Meyer v. Grant*, 486 U.S. 414 (1988) (punctuation omitted)). "First Amendment protection for such interaction . . . is at its zenith." *Id.* at 187. Accordingly, local and state governments may not restrict participation in ballot petitions without a compelling justification. *Id.* at 197.

*Buckley* considered Colorado state constitution provisions that limited who could circulate a petition for the statewide ballot. The state required petition circulators to be both Colorado residents and registered Colorado voters. *Buckley*, 525 U.S. at 192-93. In considering a challenge by petition circulators and advocacy groups, the Court reviewed statistical evidence showing how the Colorado rule prevented hundreds of thousands of residents from engaging in petition activity. *Id.* at 193-94. The Court found that an in-state voter registration requirement for circulators "limit[ed] the number of voices who will convey the initiative proponents' message and, consequently, cut down the size of the audience proponents can reach." *Id.* at 194-95. The Court then held that the requirement "imposes a burden on political expression that the State has failed to justify." *Id.* at 195.

In *Pool*, the Southern District of Texas applied *Buckley* to invalidate a provision of the Houston City Charter that banned petition circulators who were not registered city voters. *Pool*, 2022 WL 523772 at *2. Specifically, the Charter required petition circulators to "attest by notarized signature that they are one of the petition's signers." *Id*. Separately, the Charter provided that "all petition signers must be qualified voters of the City of Houston" who both "reside in Houston" and

6

are "registered to vote there." *Id.* Plaintiffs were residents of California and other Texas cities who were not registered to vote in Houston and were therefore barred from petition circulation. *Id.*

In *Pool*, the Court decided that it did not need a detailed factual record to determine that voter registration requirements for petition circulators imposed a severe burden on First Amendment rights. *Id.* at *15. As the Court summarized:

> If the Colorado voter-registration requirement at issue in *Buckley* imposed a severe burden without a compelling interest, then Houston's qualified-voter requirement—which requires circulators to be both registered to vote *and* residents of Houston—imposes a severe burden on the plaintiffs without a compelling interest in doing so. *Pool*, WL 523772 at *15.

Notably, in *Pool*, the City of Houston also agreed that the local voter registration requirement for circulators was unconstitutional. *Id.* at *15.

Here, the City Secretary has imposed a local voter registration requirement for petition circulators that is unconstitutional under *Buckley* and *Pool*. The Secretary ruled that the City would only accept signatures gathered by one of the five members of the "committee of the petitioner." Dkt. 1-3. This is a voter registration requirement because the committee of the petitioner is limited to people who are voters of the City and signers of the petition. Thus, the City is imposing a requirement on petition circulators that, under *Buckley* and *Pool*, would be unconstitutional *even if* it allowed all Edinburg voters to circulate petitions. Yet Edinburg's policy goes even further, declaring that only five local voters can participate in the circulation of a petition. Under the precedent of *Buckley* and *Pool*, Ground Game should prevail on its First Amendment claim.

**2. Ground Game complied with all requirements to qualify its petition.**

The Secretary had no legitimate grounds for denying Ground Game's petition. Out of three objections, the Secretary's second and third objections were based on the unconstitutional assertion that the City may limit petition circulators to a group of five city voters. The first objection—a format

7

objection to the Ground Game petition—is also entirely without basis and is contradicted by the record and the Charter itself.

The Secretary's first objection was, "The names and addresses, with or without the signatures or dates of births of the five voters of the City, did not appear in the petition." Dkt. 1-3. In the Secretary's letter, there is no acknowledgment that the Ground Game petition consisted of two pages, printed front and back, and that the second page included the names and addresses of the five members of the committee of the petitioner. *Cf.* Dkt. 1-1 (petition form), Dkt. 1-3 (Secretary's letter). Thus, the objection may simply be the result of an oversight by the Secretary.[1]

Nothing in the City Charter limits a petition to a single page. In fact, the Charter provides that signatures to a petition "need not all be appended to one paper," so long as circulators ensure that each petition has an attached affidavit. CHARTER, Art. XVI, § 1. Here, the Ground Game petition is two pages long, and was printed front to back. Dkt. 1, ¶ 18; Dkt. 1-1. On the second page, the petition complies with the Charter requirement that "[t]here shall appear on each petition the names and addresses" of the five members of the committee on the petitioner. Thus, the City Secretary's form objection is unreasonable and without merit.

The City of Edinburg's restrictions on petition circulators, which formed the basis of two out of the three objections of the Secretary, are plainly unconstitutional. The Secretary's third objection is contracted by the record and the City Charter itself. Ground Game is likely to prevail on the merits of its First Amendment claim.

---

[1] The potential for staff error seems heightened by the language of the second and third objections, in which the Secretary twice acknowledges the "five voters of the City listed on the 214 pages of the petition." Dkt. 1-3. It seems incongruent to acknowledge that the five voters were listed on each petition and then assert that the names did not appear.

### B. Irreparable Harm Will Ensue if the Request for a TRO is Denied

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citing *Elrod*).

Here, Ground Game and the Edinburg voters who signed the Living Wage petition are suffering a First Amendment injury for each day that passes following the City Secretary's May 20, 2022, decision to deny certification. Under the City Charter rules, there is a specific, multi-stage process to qualify an initiative for the ballot that includes the submission of signatures, time for City Secretary review, time for City Council review, a second submission of signatures, and additional time for City Secretary and City Council review. *See* Dkt. 1, ¶ 12. Ground Game's goal is to qualify the Living Wage measure for the November 8, 2022, general election ballot. *Id.* ¶ 8. Each day that passes further jeopardizes Ground Game's programmatic goal.

The deadline for the Edinburg City Council to order an election on the Living Wage petition, in time to place the proposition on the November 8, 2022, ballot, is August 22, 2022.[2] Thus, time is very short to protect Ground Game's ability to access the November 8, 2022, ballot without unconstitutional obstructions.

### C. The Threatened Injury to First Amendment Rights Outweighs Any City Interest in Limiting Who Can Participate in Local Petition Campaigns

Once a moving party establishes irreparable harm, as Ground Game has, a defendant "would need to present powerful evidence of harm to its interests" to prevent the moving party from meeting this third requirement for injunctive relief. *Opulent Life Church*, 697 F.3d at 297. Here, defendants

---

[2] The Texas Secretary of State publishes an election calendar on its website at https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml. Ground Game asks the Court to take judicial notice of this calendar, which is an official government record. *See* FED. R. EVID., R. 201.

cannot possibly meet their burden. Both *Buckley* and *Pool* stand for the proposition that a local voter registration requirement for petition circulators imposes a severe burden on First Amendment rights that is not justified by any compelling governmental interest. *Buckley*, 525 U.S. at 645; *Pool*, 2022 WL 523772 at *15. Further, to the extent that the City and City Secretary advance any governmental interest in regulating petition circulation such as those advanced by the defendants in *Buckley* and *Pool*, a flat ban on circulators who are not local voters is not the least restrictive means of advancing the government's interest. *See Buckley*, 525 U.S. 196 (State of Colorado has less restrictive means of policing lawbreakers among petition circulators); *Pool*, 2022 WL 523772 at *11-12 (city interest in ensuring election integrity did not justify ban on outside petition circulators).

In *Pool*, the Court noted that *Buckley* developed a detailed factual record, but that no such record was needed to evaluate plaintiffs' claims against the City of Houston because courts have "easily determined that voter registration requirements impose a severe burden on First Amendment rights." *Pool*, 2022 WL 523772 at *15 (citing multiple cases).

Here, the record presented, including provisions of the City Charter and the City Secretary's letter rejecting Ground Game's amended petition, support a decision in accord with *Pool*. Defendants' policy against outside petition circulators imposes a severe burden on protected speech that is not justified by a compelling governmental interest.

### D. A TRO will Protect the Free Exercise of Petitioning Rights

"Injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church*, 697 F.3d at 298. Here, Ground Game asks the Court to protect its right to petition and to also protect the rights of Edinburg petition signers to pass legislation via an initiative campaign.

## V. CONCLUSION

For the reasons stated above, Ground Game requests that this Court grant its application for a temporary restraining order and, following a hearing, issue a preliminary injunction.

Respectfully submitted,

By: */s/ Michael Siegel*
    Michael Siegel, Esq.
    mike@register2vote.org
    State Bar No. 24093148
    4107 Medical Parkway, #212
    Austin, TX 78756
    Tel: (737) 615-9044
    *Lead Counsel for Plaintiff*
    GROUND GAME TEXAS

SIEGEL, YEE, BRUNNER & MEHTA

By: */s/ Dan Siegel*
    Dan Siegel
    DanSiegel@siegelyee.com
    CA State Bar No. 56400
    475 14th Street, Suite 500
    Oakland, CA 94612
    Tel: (510) 839-1200
    *Attorneys for Plaintiff*
    GROUND GAME TEXAS