IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GROUND GAME TEXAS, § § Plaintiff, § § v. § § CLARICE Y. BALDERAS, in her § official capacity as City Secretary § of the City of Edinburg; and CITY OF § EDINBURG, TEXAS § § Defendants. § | Civil Action No. H-22-1832 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **CLARICE Y. BALDERAS, in her official capacity as City Secretary, and CITY OF EDINBURG, TEXAS,** Defendants herein, and, without waiving the right to file any further pleadings, answers, and motions, particularly its Motion to Transfer Venue, hereby file this Response to Plaintiff's Application for Temporary Restraining Order and Complaint for Injunctive and Declaratory Relief, and would respectfully show unto the Court as follows:

**I.
INTRODUCTION**

1. Plaintiff is Ground Game Texas in a nonprofit advocacy organization based in Austin,

Travis County, Texas that filed the instant Application for Temporary Restraining Order and Complaint for Injunctive and Declaratory Relief.  According to it's Complaint, Plaintiff GROUND GAME TEXAS is a nonprofit advocacy organization dedicated to engaging, activating, and mobilizing Texas voters through progressive issue campaigns, such as the initiative petition at issue here for a "Living Wage" for Edinburg employees and contractors.  Plaintiff brings this action asserting constitutional violations under 42 U.S.C. § 1983 and a request for emergency injunctive relief.  Simultaneously with the filing of this response, Defendants' have filed a Motion to Transfer Venue to the McAllen Division as all of the events complained of occurred within the McAllen Division, and all of the Defendants are located in the McAllen Division.  For the forgoing reasons, Plaintiff's Application for Temporary Restraining Order and Injunctive and Declaratory Relief must be denied.

## II.
## ARGUMENT & AUTHORITIES

A.      **Plaintiff is not a "person" entitled to bring suit under 42 U.S.C. § 1983.**

2.      Plaintiff Ground Game Texas states that it is a nonprofit advocacy organization based out of Austin, Texas that hired staff to conduct a petition campaign in the City of Edinburg.  No other plaintiffs have been identified.  Plaintiff appears to be an unincorporated association.  As an unincorporated association, Plaintiff is not a person entitled to seek redress under 42 U.S.C. § 1983.  *See Lippoldt v. Cole*, 468 F.3d 1204, 1209, 1212-16 (10th Cir. 2006)(holding that "an unincorporated association consisting of a group of volunteers who oppose abortion" was not a "person" entitled to seek redress under § 1983 because, such

an association was not included within the definition of "person" in the 1871 Dictionary Act).

**B.     Plaintiff lacks standing.**

3.     Plaintiff does not have standing to bring the instant lawsuit. To show Article III standing, a plaintiff must establish three elements: (1) "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) traceability to the defendant's conduct; and (3) a sufficient likelihood that a favorable decision on the merits will redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal quotation marks and citations omitted). Plaintiffs have the burden to demonstrate standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). In addition, the Supreme Court has formulated "prudential" standing requirements–the most important of which is the rule against third-party standing that generally requires the plaintiff to assert his or her own rights and not the rights of a third party. *See* Erwin Chemerinsky, Federal Jurisdiction, § 2.3.4 (5th ed. 2007). One may not claim standing to vindicate the constitutional rights of some third party. *Singleton v. Wulff,* 428 U.S. 106, 114, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976); *see also Barrows v. Jackson*, 346 U.S. 249, 255 (1953); *Flast v. Cohen*, 392 U.S. 83, 99 n. 20 (1968); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961). When evaluating potential exceptions to this general rule, the Supreme Court has looked to two elements: "The first is the relationship of the litigant to the person whose right he seeks to assert," *Singleton*, 428 U.S. at 114, and "[t]he other . . . is the

ability of the third party to assert his own right." *Id*. at 115-16; *see also Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.,* 854 F.2d 745, 748 (5th Cir. 1988); *Goberman v. Cascos*, No. 3:16-CV-0994-G (BH), 2016 U.S. Dist. LEXIS 89941, at *9 (N.D. Tex. 2016). Here, Plaintiff Ground Game Texas' attempt to assert constitutional claims "on its own behalf as well as on behalf of the 880 voters of the City of Edinburg who signed the initiative petition at issue" falls within the general rule. *See id*. There is no specialized relationship between Ground Game Texas and the "880 voters of the City of Edinburg who signed the initiative petition at issue," nor is there any reason why those individual citizens could not themselves assert any claims they may have. *See id*. In fact, the "880 voters" likely don't even know who or what Ground Game Texas is. Thus, Plaintiff's attempt to assert the rights of third parties in the lawsuit must fail.

4.     In addition, Plaintiff Ground Game Texas is a nonprofit organization aimed at advancing special interests. An organization with a special interest generally cannot bring suit without showing the organization itself has suffered or will suffer an injury. Subjective ideological interests—no matter how deeply felt—are not enough to confer standing. *See Sierra Club v. Morton*, 405 U.S. 727, 729-35, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). Our system of governance assigns the vindication of value preferences to the democratic political process, not the judicial process, *see Lujan*, 504 U.S. at 576, because limiting the right to sue to those most immediately affected "who have a direct stake in the outcome" prevents judicial review "at the behest of organizations who seek to do no more than vindicate their own value preferences." *See McMahon v. Fenves*, 323 F. Supp. 3d 874, 879-80 (W.D. Tex.

2018); *Sierra Club*, 405 U.S. at 740. Further, Plaintiff has not identified that its organization itself has suffered or will suffer an injury. In addition, there is no assertion or allegation that Plaintiff is bringing this lawsuit on behalf of its "members" and it is not alleged that any of the five circulators or any of the 880 voters of the City of Edinburg who signed the initiative petition at issue are "members" of Plaintiff Ground Game Texas.

5. Accordingly, Plaintiff Ground Game Texas lacks standing to assert its constitutional claims on behalf of these unidentified third parties. *See id.*

**C.  Plaintiff has failed to establish it is entitled to injunctive relief.**

6. A preliminary injunction is an "extraordinary and drastic remedy" available only upon a clear showing that the plaintiff is entitled to such relief. *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A plaintiff seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction [is] not granted; (3) that their substantial injury outweigh[s] the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest." *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (citation omitted). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F3d 570, 574 (5th Cir. 2012) (internal quotations omitted). The decision to grant a preliminary injunction "is the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

7. When a request for injunctive relief goes beyond maintaining the status quo and, instead, seeks to compel a defendant to take action, the Court must practice greater restraint. A mandatory injunction "compels defendants to promptly and affirmatively act in a specific and extremely extensive manner." *U.S. v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010); *accord Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996) (defining a mandatory injunction as "one that orders a responsible party to 'take action'") *quoted in RCI Entm't (San Antonio), Inc. v. City of San Antonio*, No. SA-21-CV-0194-JKP, 2021 U.S. Dist. LEXIS 68799, at *4 (W.D. Tex. 2021). "Although courts may appropriately issue a mandatory injunction when the currently existing status quo is causing a party to suffer irreparable injury, mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party. *RCI Entm't*, 2021 U.S. Dist. LEXIS 68799, at *4 (quoting *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)) (quotations omitted) (citing *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam)).

    **1.** **Plaintiff is unlikely to succeed on the merits**

        **a.** **The City's initiative requiring that Edinburg voters circulate the petition is constitutional.**

8. "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward

by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.' *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)) (citing *Tashijan v. Republican Party*, 479 U.S. 208, 213-14 (1986). When First Amendment rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788; 788-789, n. 9). "As a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974) *quoted in Burdick*, 504 U.S. at 433. "No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997) (citing *Storer*, 415 U.S. at 730 ("No litmus-paper test . . . separates those restrictions that are valid from those that are invidious . . . . The rule is not self-executing and is no substitute for the hard judgments that must be made.").

9.  Courts "have carefully examined any challenged residency and registration requirements [for circulators], and have divided as to their constitutionality." *Nadar v. Blackwell*, 545 F.3d 459, 477 (6th Cir. 2008). Contrary to Plaintiff's assertion in this case,

> Buckley did not hold that voter-registration requirements for petition circulators are always unconstitutional. Rather, Buckley was based on a fact-specific record developed at trial that examined the state's asserted interests and the burdens the voter-registration requirement imposed on the plaintiffs and other circulators. The Court examined the factual record and determined that Colorado's registered-voter requirement was unconstitutional.

*Pool v. City of Hous.*, No. H-19-2236, 2022 U.S. Dist. LEXIS 30456, at *35-36 (S.D. Tex. 2022). In these cases, the Court must analyze the particular facts of the case. *Id.* For example, the court in *Initiative & Referendum Inst. v. Jaeger* found that the residency requirement was constitutional. The court found that North Dakota's interest to protect the petition process from fraud and abuse and ensure that an initiative had grassroots support to prevent "the initiative process is not completely taken over by moneyed, out-of-state special interest groups." 241 F.3d 614, 617 (8th Cir. 2001).

10. The City of Edinburg requires that Edinburg voters circulate an initiative petition pursuant to Article XIV of the City Charter to protect small government and local control, ensuring that initiatives are truly local grassroots efforts for benefit of the residents of the City of Edinburg and not outsider attempts to impose ideals and policies that are either foreign to the locality or that are simply ill-advised for residents. The requirement that those circulating the petition also be registered voters ensures or allows the City to confirm that the individuals are truly Edinburg residents. People are constantly moving in and out of the City, and an identification card or driver's license, which by law need not be updated in fewer than 180 days, are insufficient to allow the City to protect grassroots initiatives. Therefore, voter

registration information allows the City to confirm residency. The restrictions in the City Charter are reasonable, furthering and protecting a compelling interest for residents of the City of Edinburg.[1]

### b. Plaintiff cannot propose an appropriation ordinance.

11. Even assuming *arguendo* that initiative petition requirements in the City's Charter were improper, the petition at issue in this case cannot be accepted for consideration by the City of Edinburg Council because it asks for an ordinance concerning appropriations. Article XIV of the City Charter explicitly states that "The voters shall have power to propose any ordinance, *except an appropriation ordinance or an ordinance making a tax levy . . . .*" (Emphasis added). The proposed ordinance Plaintiff seeks is an appropriation ordinance, which is "a measure . . . authorizing the expenditure of public monies and stipulating the amount, manner, and purpose of the various items of expenditure." *Appropriation Bill*. Black's Law Dictionary 93 (5th ed. 1979). On this basis alone, Plaintiff cannot succeed in this case.

### 2. There is no threat of irreparable injury

12. Plaintiff has failed to show the urgency in action by this Court and why the time periods for consideration and public opinion outlined in the City's Charter must be completely disregarded.

13. Even if the Court ordered that the City Council consider the proposed ordinance at the

---

[1] The very fact that this case has been filed in the Houston Division, where no City of Edinburg resident could serve as a member of the jury, is evidence of the attempt by an outside organization to influence local policy with little or no input from the people it will affect or impact.

next City Council meeting in compliance with the Texas Open Meetings Act, which is scheduled for July 5, 2022, the City Council must still, pursuant to Section 2 of Article XIV of the City Charter, refer the ordinance to a committee which has sixty (60) days to hold a public meeting and make a recommendation to the City Council, which, in turn, has an additional thirty (30) days to take action on the proposed ordinance. The process could presumably conclude until October 3, 2022, and only if approved can City Council be ready to call for an election on the proposed ordinance. Therefore, there is no guarantee that the ordinance can be placed on the November 2022 ballot, unless, of course, the Court ignores the City's Charter—which Plaintiff proposes.

14. The City Council has not had the opportunity to consider the proposed ordinance. In fact, City Council may even approve and adopt the ordinance and make change to its budget without a vote by the City's registered voters. Furthermore, if the City Council decided to leave the issue in hands of voters, it need not place the proposed ordinance in the November 2022 ballot, it may simply place the proposed ordinance in the ballot following final adjudication of this case. Without a showing or evidence supporting how Plaintiff suffers an irreparable injury by waiting, no injunctive relief should be granted. Plaintiff is not and employee or contractor of the City of Edinburg that would be affected by the adoption of the ordinance; Plaintiff is not even a business or resident of the City of Edinburg with an interest in the City's wage policies.

15. And even if this Court found that Plaintiff may suffer an irreparable injury, it does not outweigh the interest of the City of Edinburg and its residents to have the time prescribed by

Article XIV for proper public discourse on the proposed ordinance.

### 3. Granting of the injunction as requested will disserve the public interest

16. As described above, granting the injunction will essentially bypass the City of Edinburg's duly enacted processes for considering initiative petitions. By granting the injunctive relief Plaintiff requests, the Court would essentially rush consideration of the proposed ordinance to satisfy an outside agency at the expense of open public discourse at City meetings, in a committee of City residents, and through other forums that give those that are actually affected by the proposed ordinance to consider the same. An outsider pushing for the enactment of its particular policy interests on its time line at the expense of proper deliberation by the people it affects does not serve the interest of the City of Edinburg's residents.

17. Based on the foregoing, Plaintiff's request for injunctive relief should be denied.

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court transfer venue prior to considering Plaintiff's request for injunctive relief, and, if the Court considers Plaintiff's request, that it deny the same in its entirety and that it grant Defendants any relief, at law or in equity, to which they may show themselves justly entitled to receive.

Respectfully submitted,

By: */s/ Heather Scott*
    Heather Scott
    State Bar No. 24046809
    USDC Adm. No. 575294
    Email: hscott@guerrasabo.com
    *Of Counsel*

    Ysmael Fonseca
    *Attorney in Charge*
    State Bar No. 24069726
    USDC Adm. No. 1139283
    Email: yfonseca@guerrasabo.com

    GUERRA & SABO, P.L.L.C.
    10213 N 10th Street
    McAllen, Texas 78504
    Telephone: (956) 383-4300
    Facsimile: (956) 383-4304

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has on June 16, 2022, been forwarded to all counsel of record as noted hereunder:

***Via Electronic Notice***
Michael Siegel, Esq.
4107 Medical Parkway, #212
Austin, TX 78756

***Via Electronic Notice***
Dan Siegel
SIEGEL, YEE, BRUNNER & MEHTA
475 l4th Street, Suite 500
Oakland, CA 94612

By: */s/ Heather Scott*
    Heather Scott